UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>FRANK LONG BLACK CAT,<br><br>Defendant. | 5:25-CR-50015-CCT<br><br>**ORDER GRANTING<br>MOTION FOR NEW TRIAL** |

Following a two-day jury trial and conviction on one count of assault with a dangerous weapon and acquittal on one count of assault resulting in serious bodily injury, Defendant Frank Long Black Cat moves for a new trial. Docket 44. The government opposes the motion. Docket 46.

### BACKGROUND

On January 23, 2025, Long Black Cat was indicted on one count of assault with a dangerous weapon in violation of 18 U.S.C. §§ 113(a)(3) and 1153. Docket 1. On March 20, 2025, a superseding indictment was filed, charging Long Black Cat with one count of assault with a dangerous weapon in violation of 18 U.S.C. §§ 113(a)(3) and 1153 and one count of assault resulting in serious bodily injury in violation of 18 U.S.C. §§ 113(a)(6) and 1153. Docket 16. The matter proceeded to a jury trial on April 8 and 9, 2025. Docket 35. On April 9, 2025, the jury found Long Black Cat guilty of assault with a dangerous weapon and not guilty of assault resulting in serious bodily injury. Docket 42.

1

On April 21, 2025, twelve days after the trial ended, Long Black Cat timely filed a motion for a new trial, Docket 44. Long Black Cat argues that the government presented testimony from witness Frank Waters, Sr. knowing that Waters was inebriated on the day he testified, and the government did not disclose to the defense until after the trial concluded that a breathalyzer test (PBT) given to Waters the morning of trial resulted in a reading of 0.225. Docket 45 at 1-2. Long Black Cat argues that he was deprived of the opportunity to impeach Waters's recollections and ability to accurately testify at trial. *Id.* at 2. The government opposes the motion, asserting that Long Black Cat "has failed to meet his burden to show that it is probable the result of the trial would have been different had he impeached Waters with his PBT from nine-and-a-half hours earlier." Docket 46 at 7.

## I.  Waters's Testimony at Trial

During the trial, the government presented testimony from Waters[1] He was the last witness called on the first day of trial; his testimony started at approximately 4:30 PM and lasted approximately 11 minutes. Waters is the father of Long Black Cat and the uncle of the victim Jacob Two Bulls. The Court observed that Waters had some difficulty answering questions and

---

[1] An official transcript of the trial has not been prepared. The information provided is derived from a partial rough transcript of Waters's testimony, attached as Exhibit 1.

The parties referred to this witness "Frank Waters Sr." throughout the trial and in their briefing, but when Waters introduced himself at trial, he said his name is "Frank Waters Jr." Exhibit 1 at 3. He also referred to Long Black Cat as "Frank Jr." To avoid confusion and for ease of reference and consistency, the Court will just refer to this witness as "Waters."

identifying his son (the defendant) in the courtroom, but Waters did indicate that he could not hear very well.[2] *See generally* Exhibit 1. It was thus not clear to the Court if he was having trouble with the questions asked, problems with his hearing, or some other unknown issue.

During his testimony, Waters agreed that incident that was the subject of the trial took place at his home. *Id.* at 4. He testified that he was "pretty out of it" and "everything just happened quick." *Id.* at 5. Waters said he was playing dice with Jacob Two Bulls when Long Black Cat entered the home and Long Black Cat and Two Bulls started fighting. *Id.* Waters said he "[couldn't] hardly see anything" and Long Black Cat and Two Bulls went outside; that was all he remembered. *Id.* When asked if he remembered hearing Frank Jr. (Long Black Cat) say anything after he came into the kitchen, Waters responded, "Not really." *Id.* at 5-6.

However, Waters testified that Long Black Cat had a knife and tried to use it on Two Bulls. *Id.* at 7. He claimed that he heard Long Black Cat say "something about - - about trying to kill him or something." *Id.* He then testified, "They – they both fought. Kind of messed up my kitchen part. I had to say, 'What are you guys doing?' And I was telling my son, 'You better behave.'" *Id.* Waters first indicated he did not recall talking with Criminal Investigator Nez the day following the incident. *Id.* at 6-7. However, when the government asked, "Did you tell Criminal Investigator Nez that you heard Frank Jr., say,

---

[2] Waters was provided with headphones to assist his hearing about half-way through his testimony.

3

'I'll kill you, you fucker'?[,]" *Id.* at 7, Waters responded "I kind of - - kind of heard him saying something like that. But, just like I was saying, it just happened real quick[,]" *Id.* at 7-8. On cross-examination, defense counsel only asked Waters one question, his age. He is 53 years old. *Id.*

## II.     Newly Discovered Evidence on Waters's Condition

The government does not dispute that after the trial concluded, Long Black Cat learned for the first time that the government had given Waters a PBT at 7:00 AM on the first day of trial, and the result was 0.225, which is above the legal limit to drive in South Dakota. Docket 45 at 1-2; Docket 46, Docket 46-1. The Court first learned of this information concerning Waters in Long Black Cat's motion for a new trial.

Long Black Cat asserts that because he was not aware of the PBT, he did not have the opportunity to impeach Waters's recollections and ability to accurately testify at trial. Docket 45 at 2. Long Black Cat notes that the charge he was convicted of, assault with a dangerous weapon, required the jury to find that Long Black Cat had the specific intent to injure Two Bulls. *Id.* He then argues that Waters's testimony about Long Black Cat's statements at the time of the alleged assault was critical to the government's case. *Id.* Yet, the issue of Waters's alleged inebriation and PBT of 0.225 was never raised during the trial, depriving both him and the Court of the opportunity to address whether Waters was competent to testify at the time of trial. *Id.*

Government counsel does not offer any explanation for the government's failure to disclose this information, other than counsel's comment in an e-mail

4

to defense counsel that "Sr. (Waters) testified around 4:30 PM, on April 8th. I could not smell alcohol on him nor did he appear intoxicated whatsoever." Docket 46-1. The government asserts that Long Black Cat has not met his burden of showing that the interests of justice require a new trial. Docket 46 at 2, 8.

## LEGAL STANDARD

### I. Legal Standard for Motion for New Trial

"Under Rule 33 of the Federal Rules of Criminal Procedure, a court can vacate a judgment and grant a new trial 'if the interest of justice so requires.'" *United States v. Sierra*, 5:19-CR-50110-KES, 2023 WL 1785573, at *3 (D.S.D. Feb. 6, 2023), *aff'd*, 94 F.4th 721 (8th Cir. 2024), *cert. denied*, 145 S. Ct. 395 (2024) (quoting Fed. R. Crim. P. 33(a)). The decision to grant or deny a Rule 33 motion "is within the sound discretion of the [district] court." *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002). The court's discretion is both broad and limited. *Id.* It is broad to the extent the court "can weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." *Id.* (citation omitted). The court's discretion is limited to the extent the court must allow the jury's verdict to stand unless it "determines that a miscarriage of justice will occur." *United States v. Worman*, 622 F.3d 969, 978 (8th Cir. 2010). "[T]he court need not view the evidence most favorably to the verdict, but must weigh the evidence and evaluate the credibility of the witnesses." *Id.* at 977.

## II. Allegations of *Brady* Violations

"A district court may vacate a conviction based on newly discovered evidence." *United States v. Chappell*, 990 F.3d 673, 677 (8th Cir. 2021) (citing Fed. R. Crim. P. 33(b)(1)). Claims arising under *Brady v. Maryland,* 373 U.S. 83 (1963) "apply in situations that 'involve[ ] the discovery, after trial of information which *had been known* to the prosecution but unknown to the defense.'" *Martinez v. Ryan*, 926 F.3d 1215, 1228 (9th Cir. 2019) (citing *United States v. Agurs,* 427 U.S. 97, 103 (1976)). "To make out a *Brady* violation, a defendant must show (1) the evidence is 'favorable to the accused, either because it is exculpatory, or because it is impeaching;' (2) the government suppressed that evidence; and (3) the evidence is material to either guilt or punishment." *Sierra*, 2023 WL 1785573 at *3 (quoting *United States v. Tyndall*, 521 F.3d 877, 881 (8th Cir. 2008)). "The evidence is not material . . . unless there is a reasonable probability that the verdict would have been different if the evidence had not been suppressed." *Id.* (quoting *Tyndall*, 521 F.3d at 881).

"The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *United States v. Whitehill*, 532 F.3d 746, 753 (8th Cir. 2008) (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)). "A 'reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression "undermines confidence in the outcome of the trial." *Kyles*, 514 U.S. at 434 (quoting *United States v. Bagley,* 473 U.S. 667, 678 (1985)).

6

## DISCUSSION

Long Black Cat moves for a new trial asserting that newly discovered evidence shows the government was aware that Waters may have been intoxicated during his testimony at the jury trial, and the government failed to disclose that information, depriving Long Black Cat of the opportunity to assess Waters's competency and potentially impeach his testimony. Docket 45 at 3-5. It is undisputed that the PBT evidence is newly discovered since trial. Docket 46-1. The government did not disclose the information about Waters's PBT and result to defense counsel until six days after the trial ended, on April 14, 2025, in response to an inquiry from defense counsel. Docket 46-1.

I.   **The PBT Evidence Was Favorable to Long Black Cat**

In order to establish a *Brady* violation, Long Black Cat must show that "the evidence was favorable to him[.]" *United States v. Garrett*, 898 F.3d 811, 816 (8th Cir. 2018). "The *Brady* rule requires prosecutors to disclose evidence favorable to the accused if the suppression of the evidence would deprive the accused of a fair trial." *United States v. Wilbourn*, No. CR 10-40007-02, 2011 WL 98470, at *1 (D.S.D. Jan. 12, 2011), *aff'd,* 478 F. App'x 332 (8th Cir. 2012) (citing *Bagley,* 473 U.S. at 676). "Impeachment as well as exculpatory evidence falls within this rule." *Id.* "Under *Giglio*, the government must disclose all material evidence that affects credibility*." United States v. Primm*, 63 F.4th 1186, 1192 (8th Cir. 2023) (quoting *Giglio v. United States*, 405 U.S. 150, 154 (1972)).

The government argues that Long Black Cat "bases his entire motion on information that would be used for impeachment purposes." Docket 46 at 5. But that characterization of Long Black's motion ignores the more critical point highlighted by Long Black Cat that the Court was deprived of the ability to assess Waters's competency to testify. Moreover, the Court considers the fact that Waters provided testimony crucial to the government's case, namely that Long Black Cat acted with the required specific intent. *See* Exhibit 1 at 7-8. While the victim, Two Bulls, testified about the assault, he did not state, as Waters did, that Long Black Cat's made a verbal threat to kill Two Bulls. *See* Exhibit 2 at 7-9.[3] The evidence of Long Black Cat's specific intent only came from Waters, so it is not cumulative.

Under Federal Rule of Evidence 601, "Every person is competent to be a witness unless these rules provide otherwise." Fed. R. Evid. 601. Moreover, as one court explained, "[a] witness is not rendered incompetent to testify merely because the witness was under the influence of drugs at the time of testifying." *United States v. Frezzell*, 793 F. App'x 133, 136 (3d Cir. 2019) (quoting 98 C.J.S. Witnesses § 115 (2019)). However, "[i]f the witness was under the influence at the time of the events which he testifies to or at the time he testifies, this condition is provable to impeach on cross or by extrinsic evidence." *Id.* (quoting 1 McCormick on Evid. § 44 (7th ed. 2016)).

---

[3] An official transcript of the trial has not been prepared. The information provided is derived from a partial rough transcript of Two Bulls' testimony, attached as Exhibit 2.

Here, Long Black Cat was deprived of the opportunity to impeach or explore Waters' competency because the government did not disclose the information related to Waters' intoxication. In addition, the Court did not have the opportunity to assess Waters's competency. *See United States v. Bixler*, No. 21-5194, 2022 WL 247740, *8 (6th Cir. 2022) (where the court determined if a witness under the influence of drugs was competent to testify after assessing competency); *see also United States v. Meehan*, 741 F. App'x 864, 874 (3d Cir. 2018) (discussing the district court's duty to "decide any preliminary question about whether a witness is qualified" (citing Fed. R. Evid. 104)). Therefore, the Court could not determine whether to allow or strike Waters's testimony. *See Frezzell*, 793 F. App'x at 136 (noting that "[i]t is not an abuse of discretion for a trial court to allow or refuse to strike testimony from a witness who is under the influence of alcohol or drugs" (citation omitted)). Further, because the government did not disclose the information about Waters's PBT, there was no opportunity to consider whether the jury should have been instructed about the effect of the alcohol on his credibility, as it could have affected his "'ability to perceive, remember or relate events in question." *Meehan*, 741 F. App'x at 874; *Frezzell*, 793 F. App'x at 136 (recognizing that "[i]f it is determined a witness in [sic] intoxicated at the time of giving testimony, it is proper for the trial court to allow the testimony and leave it for the jury to determine the proper weight of the witness' testimony" (citation omitted)).

## II. The PBT Evidence Was Material to the Outcome of Trial

Long Black Cat must also show that the PBT evidence "was material to the outcome of the trial." *Garrett*, 898 F.3d at 816. "For evidence to be material, there must be a 'reasonable probability that had it been disclosed, the result of the proceeding would have been different." *Id.* (quoting *United States v. Robinson*, 809 F.3d 991, 996 (8th Cir. 2016)). "A reasonable probability is a probability sufficient to undermine the reviewing court's confidence in the outcome of the proceeding." *United States v. Tate*, 633 F.3d 624, 630 (8th Cir. 2011) (citation omitted).

The government argues that "a PBT would likely be inadmissible as evidence at trial—especially considering the fact that it was taken far in advance of testimony."[4] Docket 46 at 6. Setting aside the issue of whether nine hours qualifies as "far in advance of testimony," and the fact that Waters's level of sobriety could affect his competency to testify, the PBT evidence certainly affects his credibility and his reliability as a witness, and the jury's verdict may well have hinged on the reliability of Waters's testimony. *See Bagley*, 473 U.S. at 677 (1985) ("When the 'reliability of a given witness may well be

---

[4] The case the government relies for this argument is distinguishable. Docket 46 at 6 (citing *United States v. Iron Cloud*, 171 F.3d 587 (8th Cir. 1999)). *Iron Cloud* dealt with an involuntary manslaughter case where a PBT was given after an accident occurred. 171 F.3d at 589. At trial, the district court allowed the government's witness to discuss the results of the PBT in relation to the calculation of the defendant's blood alcohol content. *Id.* at 589–90. On appeal, the Eighth Circuit held "that the PBT is not reliable as anything more than a screening test to be used for probable case" and that it was error for the court to admit the PBT evidence. *Id.* at 591. Here, in contrast, the issue does not concern whether the PBT evidence should have been admitted at trial; rather, the Court is assessing the import of the government's failure to disclose that the PBT had been administered to Waters.

determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within th[e] general rule [of *Brady*]." (alteration in original) (quoting *Giglio*, 405 U.S. at 154)). Waters was the only witness to provide evidence of Long Black Cat's alleged statement that he was going to kill Two Bulls, evidence that was important to the jury's finding of specific intent on the assault with a deadly weapon charge. The Court also considers its observation that Waters had some difficulty with his testimony at trial and had trouble identifying his own son in the courtroom. While the Court cannot attribute those difficulties to the way the questions were asked, his hearing problems, or some other unknown issue, the Court is certain that the government's failure to disclose the information concerning Waters's PBT results deprived Long Black Cat and the Court of an opportunity to ask that another PBT be administered and, more importantly, to canvas Waters to determine his competency before he testified.[5]

The Court notes that "*Brady* does not require pretrial disclosure as long as the ultimate disclosure is made before it is too late for the defendant to make use of any benefits of the evidence." *United States v. Kime*, 99 F.3d 870, 882 (8th Cir. 1996). Here, however, the government chose only to provide the evidence of Waters's state of sobriety after the trial had ended, which deprived Long Black Cat of the opportunity to use that evidence at trial. *See United States v. Santisteban,* 501 F.3d 873, 877 (8th Cir. 2007) ("The government has

---

[5] The Court notes that government could have called Waters to testify on the second day of trial, rather than the first, because the trial was scheduled to last two days.

11

suppressed evidence when it was otherwise unavailable to the defendant, and the prosecution failed to disclose the evidence in time for the defendant to use it." (citation omitted)). Moreover, the newly discovered PBT evidence is both favorable to Long Black Cat and material. The evidence could have been used not only to impeach Waters's testimony, but it also could have potentially had the effect of barring his testimony in its entirety. Finally, the evidence to support the assault with a dangerous weapon charge was not overwhelming, given the fact that Waters was the only witness to testify as to Long Black Cat's alleged comments on his specific intent. Therefore, the Court concludes that if the PBT evidence had been disclosed to Long Black Cat, there is a reasonable probability that the result of the proceeding would have been different. *See United States v. Garcia*, 562 F.3d 947, 953 (8th Cir. 2009) (stating that "information is deemed material so as to justify a retrial 'only if there is a reasonable probability that, had [it] been disclosed to the defense, the result of the proceeding would have been different" (quoting *United States v. Spinelli*, 551 F.3d 159, 164 (2d Cir. 2008)).

    Thus, it is

    ORDERED that Long Black Cat's motion for new trial, Docket 44, is granted.

    Dated June 9, 2025.

BY THE COURT:

/s/ *Camela C. Theeler*
CAMELA C. THEELER
UNITED STATES DISTRICT JUDGE